C. W. GILLIAM, TRUSTEE, JENNINGS MANUFACTURING COMPANY, BANKRUPT, v. T. B. SAUNDERS, W. G. SMITHERMAN AND B. S. HURLEY.

(Filed 22 February, 1933.)

Judgments K c — Issue of conspiracy in procuring judgment held determined adversely to plaintiff by jury's verdict on conflicting evidence.

While the courts will not permit the same attorney to represent both parties to an action, even colorably, in this action to set aside a judgment on the ground of conspiracy of the parties in procuring the judgment in order to defeat the plaintiff's recovery in an action pending against the defendant at the time of the rendition of the judgment sought to be set aside, the jury found upon conflicting evidence that the attorney in the action attacked did not act for both parties and did not enter into a conspiracy to procure a fraudulent judgment, and the verdict of the jury determines the rights of the parties.

CIVIL ACTION, before *Schenck, J.,* at April Term, 1932, of MONT-GOMERY.

On or about 21 March, 1928, certain property of the bankrupt was sold by decree in bankruptcy, and the defendant, T. B. Saunders, purchased the property for the sum of $26,250, Saunders did not comply with the bid and thereafter the property was resold on 23 June, 1928, and brought approximately $20,000. Thereafter the trustee in bankruptcy instituted a suit against the defendant, Saunders, to recover the deficiency occasioned by his failure to comply with his bid, amounting to $4,500. On 17 September, 1928, while said suit was pending, W. G. Smitherman instituted a suit against Saunders in Montgomery County to recover a sum of $14,100. The summons in the cause was issued on 17 September, 1928, and the following entry appears thereon: "I accept service of the within summons and copy of the complaint. This 17 September, 1928. T. B. Saunders." No answer was filed by Saunders and judgment by default for said sum was duly taken on 10 June, 1929. Thereafter the plaintiff, trustee in bankruptcy, secured judgment against Saunders for said sum of $4,500 on 9 October, 1930. Thus, it appears that while the bankruptcy action was pending against Saunders and before final judgment, Smitherman secured a judgment against Saunders in Montgomery County in 1929.

On 14 October, 1931, Gilliam, trustee in bankruptcy, brought this suit in Montgomery County to set aside the Smitherman judgment, alleging that said judgment was procured as a result of conspiracy between Saunders, Smitherman and Hurley. The cause of action is substantially stated in the following excerpt from the complaint: "The said T. B. Saunders, B. S. Hurley and W. B. Smitherman did, unlawfully and illegally, conspire together, scheme, plan and design a plan or method to unlawfully and illegally prevent the collection and enforcement of any judgment recovered against the said T. B. Saunders; that in furtherance of such scheme, plan, design and conspiracy, the said B. S. Hurley, with the knowledge and consent and approval of the said T. B. Saunders and W. G. Smitherman, procured and caused to be issued out of the office of the clerk of the Superior Court a summons in an action entitled W. G. Smitherman *v.* T. B. Saunders; that at the time the said summons was procured, the said B. S. Hurley represented himself as being counsel for the plaintiff in said action, W. G. Smitherman, and did, on said date, file a complaint signed by the said B. S. Hurley, as attorney for the plaintiff. . . . T. B. Saunders was not indebted to plaintiff in any amount and the alleged cause of action was instituted solely for the purpose of preventing the collection of judgment procured by the plaintiff

herein. . . . In furtherance of said conspiracy . . . B. S. Hurley, without any authority in fact, law, or equity, and as attorney for the defendant, T. B. Saunders, did, on 17 September, 1928, accept service of said summons for the said T. B. Saunders in said action while he was at the time also attorney for the plaintiff, W. G. Smitherman."

Mr. Hurley testified that Smitherman employed him to collect a claim against Saunders; that Saunders came to his office in response to notice, and that the complaint and summons had been filled out and executed at the time. Saunders was ill and his arm in a swing, and, admitting the correctness of the account, requested said attorney to accept service of summons in order to save the costs, and to write his name for him on the summons. The attorney further expressly and unequivocally denied that he was representing Saunders in the transaction, or that there was any lack of good faith. He testified that he had represented Saunders in other matters connected with the bankruptcy proceeding, but was not attempting or undertaking to represent both parties in the suit of Smitherman *v.* Saunders. Saunders testified that Hurley was not representing him in the Smitherman suit, but that he had employed Hurley to represent him in other matters. He further testified that Smitherman's claim was a bona fide one, and that he requested Hurley to sign the acceptance of summons.

Evidence offered by the plaintiff tended to show that Saunders in an examination before the referee in bankruptcy, had stated that Hurley was his attorney at the time he accepted service of summons in the Smitherman suit, and that it was a friendly summons.

The following issues were submitted to the jury:

1. "Did the defendants, T. B. Saunders, W. G. Smitherman and B. S. Hurley, connive and conspire, scheme and plan together to take a fraudulent judgment in the case of W. G. Smitherman *v.* T. B. Saunders, as alleged in the complaint?"

2. "Did the defendant, B. S. Hurley, attorney at law, act as attorney for both plaintiff, W. G. Smitherman, and the defendant, T. B. Saunders, in the suit entitled W. G. Smitherman *v.* T. B. Saunders, as set out in the complaint?"

The jury answered both issues "No."

From judgment upon the verdict the plaintiff appealed.

*Armstrong & Armstrong, P. V. Critcher, Martin & Brinkley and H. R. Kyser for plaintiff.*

*Brown & Brown and Garland S. Garriss for defendant.*

BROGDEN, J. In 1799 the General Assembly of North Carolina created an appellate court, consisting of the Superior Court judges, who, of

course, heard and adjudicated appeals from their own judgments. This statute was continued in force by chapter 12 of the Laws of 1801, which expressly provided, among other things, that "no attorney should be allowed to speak or admitted as counsel in the aforesaid court." Doubtless it was supposed that, if attorneys were permitted to appear in the Appellate Court, by alertness of mind or smoothness of tongue, they would either lure the judgment of that high tribunal or perhaps corrupt the morals of the distinguished jurists. At any rate, attorneys were not allowed to appear in the Appellate Court of that day or to champion the cause of their clients therein. While that absurd barbarism has been abated, this Court, as constituted in 1819, has continuously held that an attorney, however friendly the relationship of the parties, cannot appear even colorably for opposing litigants. Apparently the question was first considered in *Moore v. Gidney,* 75 N. C., 34. The Court said: "But it is denied that the counsel of the plaintiff acted as the defendant's counsel, farther than in drawing up her answer; and we are satisfied that no improper influence was intended. Yet the law does not tolerate that the same counsel may appear on both sides of an adversary proceeding, even colorably; and in general will not permit a judgment or decree so affected to stand if made the subject of exception in due time by the parties injured thereby. The presumption, in such cases, is that the party was unduly influenced by that relation, and the opposite party cannot take the benefit of it. It does not appear affirmatively in this case that Mrs. Moore, the defendant, was not influenced to her prejudice and thrown off her guard thereby. The purity and fairness of all judicial proceedings should so appear when drawn in question." *Molyneux v. Huey,* 81 N. C., 106; *Patrick v. Bryan,* 202 N. C., 62, 162 S. E., 207. Moreover, the unamenable mandate of both law and morals forbids an attorney, in the homely phrase of the fields, "to run with the rabbits and bark with the hounds."

In the present case the issue of fact was sharply drawn. The evidence was conflicting. A jury heard the witnesses, observed their demeanor, weighed the testimony, and found the verdict. This verdict expressly declares that the attorney did not act for both parties and did not enter into a conspiracy to procure a fraudulent judgment. The cause of action alleged in the complaint, rests exclusively upon allegations of conspiracy in procuring the judgment, for that the attorney accepted service of summons at the request of defendant in the suit of Smitherman *v.* Saunders. This cause of action and the pertinent issues arising therefrom have been settled by the verdict of the jury. Hence, other aspects debated in the briefs have no application.

Affirmed.